**Lisa I. JONES, Plaintiff,**

v.

**FREDERICK COUNTY BOARD OF EDUCATION, et al., Defendants.**

**Civ. A. No. Y–87–921.**

United States District Court,
D. Maryland.

June 20, 1988.

Peter N. Mann, and Richard Seligman, Washington, D.C., for plaintiff.

Deborah T. Garren, Baltimore, Md., for defendants Frederick County Bd. of Educ., Stuart Berger, and Walt Brillhart.

Lawrence E. Speelman, Co. Atty., and Joseph E. Emerson, Deputy Co. Atty., Frederick, Md., for defendants Frederick County, Inc., J. Anita Stup, Mark L. Hoke, Richard L. Grossnickle, Charles C. Smith, and Sterling B. Ballenger, Sr.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiff Lisa I. Jones sued the Frederick County Board of Education, its School Superintendent Stuart Berger, and New Market Middle School Principal Walter Brilhart to recover compensatory and punitive damages for employment discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, denial of her Fourteenth Amendment right to equal protection in violation of 42 U.S.C. § 1983, and employment discrimination based on handicap in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. On October 29, 1987, the Court granted defendants' motion to dismiss plaintiff's Title VII claim for failure to comply with the statute of limitations. Defendants now move for summary judgment against plaintiff's remaining claims.

### Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment of the Constitution bars plaintiff from suing the Frederick County Board of Education, as well as Superintendent Berger and Principal Brilhart in their official capacities. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The United States Supreme Court has provided that the significance of this Amendment "lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art[icle] III." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). Accordingly, the Court has held that the Eleventh Amendment, despite its express language, even bars a citizen from suing his own state in federal court. *Hans v. Louisiana*, 134 U.S. 1, 20–21, 10 S.Ct. 504, 509, 33 L.Ed. 842 (1890). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100, 104 S.Ct. at 908.

There are several narrow exceptions to the scope of the Eleventh Amendment. For example, Congress may abrogate the Eleventh Amendment immunity; however, it must provide "an unequivocal expression

of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907 (quoting *Quern v. Jordan*, 440 U.S. 332, 342, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979)). In this case, Congress did not abrogate the Eleventh Amendment immunity in § 1983 or the Rehabilitation Act. *Quern*, 440 U.S. at 341, 99 S.Ct. at 1145 (§ 1983); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 247, 105 S.Ct. 3142, 3150, 87 L.Ed.2d 171 (1985) (Rehabilitation Act).[1]

In addition, a state may waive its Eleventh Amendment immunity and consent to suit in federal court; however, it must do so "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). A state's general waiver of sovereign immunity does not qualify as a waiver of its constitutional immunity from suit in federal court under the Eleventh Amendment. *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association*, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (*per curiam*). The Court will address the issue of a state's waiver of its Eleventh Amendment immunity after determining whether the Frederick County Board of Education qualifies for Eleventh Amendment protection as an agency of the State of Maryland.

Finally, the Eleventh Amendment does not bar a citizen from suing a state official in federal court for federal law or constitutional violations during the course of his official duties. *Ex parte Young*, 209 U.S. 123, 167–68, 28 S.Ct. 441, 457, 52 L.Ed. 714 (1908). However, the federal court may only award the claimant prospective, injunctive relief. *Edelman*, 415 U.S. at 677, 94 S.Ct. at 1362 (citing *Ex parte Young*);

see also *Pennhurst*, 465 U.S. at 102–03, 104 S.Ct. at 909. If the Court concludes that the Frederick County Board of Education constitutes a Maryland agency, then Superintendent Berger and Principal Brilhart will qualify as state officials and will be entitled to limited Fourteenth Amendment immunity.

This Court finds the following factors helpful in determining whether an entity, such as the Frederick County Board of Education, is an agency of the state for Eleventh Amendment purposes:

1. state statutes and court decisions governing the entity;
2. its source of revenue;
3. its autonomy from the state government;
4. whether it has the power to sue and be sued;
5. whether it has the power to contract; and
6. whether the state would be responsible for a judgment against the entity.

*Patterson v. Ramsey*, 413 F.Supp. 523, 529 (D.Md.1976), *aff'd on other grounds*, 552 F.2d 117 (4th Cir.1977).

The Maryland Court of Appeals has consistently held that the county boards of education are agencies of the state. *Montgomery County Education Association v. Board of Education of Montgomery County*, 311 Md. 303, 317, 534 A.2d 980 (1987); *Board of Education of Prince George's County v. Prince George's County Educators' Association*, 309 Md. 85, 95 n. 3, 522 A.2d 931 (1987); *McCarthy v. Board of Education of Anne Arundel County*, 280 Md. 634, 650, 374 A.2d 1135 (1977). The Maryland statute clearly supports this conclusion.

Maryland law creates the county boards of education and governs their composition and membership. Md. [Educ.] Code Ann. §§ 3–103, 3–105, 3–108, 3–113. The statute

1. Congress responded to the Supreme Court's decision in *Atascadero* by enacting 42 U.S.C. § 2000d–7, which specifically abrogates the Eleventh Amendment immunity in section 504 of the Rehabilitation Act, 29 U.S.C. § 794, for violations occurring after October 21, 1986. This amendment does not apply to this case because plaintiff has not alleged any violations occuring after its effective date.

requires the county boards to "carry out the applicable provisions of [the Education Code of Maryland] and the bylaws, rules, regulations, and policies of the State Board [of Education]." Md. [Educ.] Code Ann. § 4–107. The county boards must obtain the state's approval regarding the establishment of schools, acquisition or disposition of property, construction or renovation of buildings, and curriculum. Md. [Educ.] Code Ann. §§ 4–108, 4–110, 4–114. The state appropriates substantial funds to support the county boards. Md. [Educ.] Code Ann. §§ 5–201 to 5–206. In return, the county boards must acquiesce to an annual audit and submit an annual budget to the state. Md. [Educ.] Code Ann. §§ 5–101, 5–108.

■ The Maryland statute does provide the county boards with the power to sue and be sued. Md. [Educ.] Code Ann. § 3–104(b)(2). In addition, state law requires the county boards to carry at least $100,000 in comprehensive liability insurance, and only allows them to raise the sovereign immunity defense against claims exceeding their coverage. Md. [Educ.] Code Ann. § 4–105. Nevertheless, the Court concludes from a majority of the factors articulated in *Patterson* that the county boards of education are agents of the state.

The Court also finds that the state has not waived the Eleventh Amendment immunity of its agents, the county boards. As noted above, a state may only consent to suit by a citizen in federal court "by the most express language." *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1361. In this case, the state's partial waiver of the county boards' sovereign immunity does not constitute a waiver of their constitutional immunity from suit in federal court under the Eleventh Amendment. *Florida Department of Health and Rehabilitative Services*, 450 U.S. at 150, 101 S.Ct. at 1034.

The Court concludes that the Frederick County Board of Education is an agent of the State of Maryland entitled to Eleventh Amendment immunity. Accordingly, the Court grants defendants' motion for summary judgment regarding plaintiff's claims against the Frederick County Board of Education.

■ Superintendent Berger and Principal Brilhart qualify as state officials because they are employees of the Frederick County Board of Education. Md. [Educ.] Code Ann. § 4–105.1(a). Thus, plaintiff may only sue them in their official capacities for prospective, injunctive relief under the Eleventh Amendment. However, plaintiff only seeks to recover compensatory and punitive damages from these defendants. Accordingly, the Court grants defendants' motion for summary judgment regarding plaintiff's claims against Superintendent Berger and Principal Brilhart in their official capacities.

The Court's application of the Eleventh Amendment limits plaintiff's action to her claims against Superintendent Berger and Principal Brilhart in their individual capacities [2] under § 1983 and section 504 of the Rehabilitation Act.

### Statute of Limitations

■ Defendants next argue that the applicable time limitation for actions under § 1983 and section 504 of the Rehabilita-

---

**2.** In *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), the Supreme Court recognized that lawyers and trial courts continue to confuse personal, or individual, capacity actions with official capacity actions. Accordingly, the Court defined and distinguished these respective actions:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Id.* at 165–66, 105 S.Ct. at 3105 (citations omitted) (emphasis in original).

tion Act bars many of plaintiff's claims against Superintendent Berger and Principal Brilhart in their individual capacities. Neither § 1983 nor section 504 of the Rehabilitation Act expressly provides a statute of limitations. Accordingly, courts borrow the most appropriate state time limitation. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (§ 1983); *Andrews v. Consolidated Rail Corp.*, 831 F.2d 678, 683 (7th Cir.1987) (section 504); *Alexopulos v. San Francisco Unified School District*, 817 F.2d 551, 554 (9th Cir.1987) (section 504). Maryland's general three-year limitation for civil actions applies to claims under both § 1983 and section 504 of the Rehabilitation Act. Md. [Cts. & Jud.Proc.] Code Ann. § 5–101; *Grattan v. Burnett*, 710 F.2d 160, 162–63 (4th Cir.1983), *aff'd*, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).

Plaintiff claims that defendants discriminated against her based on race and handicap by transferring her from a full-time teaching position at New Market Middle School to a split teaching position at New Market Middle School and Brunswick Middle School for the 1982–83 school year; by denying her the full-time teaching position at New Market Middle School for the 1983–84 and 1984–85 school years; and by transferring her to Catoctin High School in February 1985, when she returned from disability leave. In June 1985, plaintiff retired from teaching and alleged that she was constructively discharged by defendants' discriminatory acts. She filed this civil action on April 15, 1987.

■ Defendants argue that the three-year time limitation bars plaintiff from pursuing her claims accruing before April 15, 1984. Plaintiff misconstrues the continu-

ing violation doctrine as allowing her to raise all of her claims.

[T]he continuing violation theory is available to remedy employment practices and policies that operate to deny employees their protected rights if the offending practice continued to be enforced during the limitations period. To establish a continuing violation, however, the plaintiff must establish that the unconstitutional or illegal act was a part of 'standard operating procedure,' a fixed and continuing practice.

If the discrimination alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory violation does not occur at a single moment, but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and *only those violations preceding the filing of the complaint by the full limitations period are foreclosed.* Similarly, if the statutory violation occurs as a result of a continuing policy, itself illegal, then the statute does not foreclose an action aimed at the company's enforcement of the policy *within the limitations period.*

*Perez v. Laredo Junior College*, 706 F.2d 731, 733–34 (5th Cir.1983) (footnotes omitted) (emphasis supplied), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984); *see also Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir.1984) (discussing the continuing violation doctrine).[3]

The Supreme Court has concluded that "the critical question is whether any present *violation* exists." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (emphasis in original).

---

**3.** Defendants note that the Fourth Circuit has held the continuing violation doctrine inapplicable in § 1981 actions, *Kornegay v. Burlington, Industries, Inc.*, 803 F.2d 787, 788 (4th Cir.1986), and argue that it should not apply in claims under § 1983 and section 504 of the Rehabilitation Act.

"The continuing violation theory, which had its genesis in decisions interpreting Title VII of the Civil Rights Act of 1964, has been applied in a wide variety of circumstances." *Velazquez,*

736 F.2d at 833 (citing B. Schlei & P. Grossman, Employment Discrimination Law 884–908 (1976)). Many jurisdictions employ this doctrine in § 1983 suits. *See, e.g., Stallworth v. Shuler,* 777 F.2d 1431, 1435 (11th Cir.1985); *Pike v. City of Mission, Kansas,* 731 F.2d 655, 660 (10th Cir.1984); *Velazquez,* 736 F.2d at 833; *Perez,* 706 F.2d at 733. The continuing violation theory also seems applicable in actions involving section 504 of the Rehabilitation Act. Thus, the Court will apply this doctrine in this suit.

A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

*Id.; see also Woodard v. Lehman,* 717 F.2d 909, 914–15 (4th Cir.1983) (applying *Evans* ). Thus, plaintiff may pursue any claims against Superintendent Berger and Principal Brilhart in their individual capacities for alleged acts of employment discrimination occurring on or after April 15, 1984. The Court grants defendants' motion for summary judgment regarding plaintiff's claims accruing before April 15, 1984, but notes that these barred claims may constitute relevant evidence at trial to show an alleged pattern of employment discrimination.[4]

## *Conclusion*

Accordingly, the Court grants defendants' motion for summary judgment regarding plaintiff's claims against the Frederick County Board of Education, as well as Superintendent Berger and Principal Brilhart in their official capacities, and enters judgment in favor of these defendants. The Court also grants defendants' motion for summary judgment concerning plaintiff's claims accruing before April 15, 1984. After reviewing plaintiff's remaining claims against Superintendent Berger and Principal Brilhart in their individual capacities under § 1983 and section 504 of the Rehabilitation Act, the Court concludes that "there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). According-ly, the Court denies defendants' motion for summary judgment regarding these claims.

## ORDER

In accordance with the attached Memorandum, it is this 20th day of June, 1988, by the United States District Court for the District of Maryland, ORDERED:

1. That defendants' motion for summary judgment BE, and the same IS, hereby GRANTED regarding plaintiff's claims against the Frederick County Board of Education, as well as Superintendent Berger and Principal Brilhart in their official capacities;

2. That judgment BE, and the same IS, hereby ENTERED in favor of the Frederick County Board of Education, as well as Superintendent Berger and Principal Brilhart in their official capacities;

3. That defendants' motion for summary judgment BE, and the same IS, hereby GRANTED regarding plaintiff's claims accruing before April 15, 1984;

4. That defendants' motion for summary judgment BE, and the same IS, hereby DENIED concerning plaintiff's claims accruing on or after April 15, 1984, against Superintendent Berger and Principal Brilhart in their individual capacities under § 1983 and section 504 of the Rehabilitation Act; and

5. That a copy of this Memorandum and Order be mailed to counsel for the respective parties.

**4.** After reviewing the caselaw on the continuing violation doctrine, the Court concludes that it is yet another attempt by the legal profession to make the simple complex. The statute of limitations bars a party from litigating stale claims. At the same time, Rule 404(b) of the Federal Rules of Evidence allows a party to introduce evidence of prior bad acts for purposes of show-ing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The continuing violation doctrine is merely a restatement of these two simple rules in the context of employment discrimination law. This doctrine is both redundant and unnecessary.