Glenwood ADAMS

v.

CALVERT COUNTY PUBLIC SCHOOLS.

No. Civ.A. DKC2001–1012.

United States District Court, D. Maryland.

May 22, 2002.

Herbert Vincent McKnight, Jr., Slevin and Hart PC, Washington, DC, for Plaintiff.

Patrick M. Pilachowski, William J. Rosenthal, Shawe and Rosenthal, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this employment discrimination case is Defendant Calvert County Public Schools' motion for summary judgment. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion for summary judgment will be granted.

## I. Background

The following facts are uncontroverted or in the light most favorable to Plaintiff.

Glenwood Adams ("Adams"), an African–American, was hired by Calvert County Public Schools ("CCPS") as a Custodian at Northern High School in 1980. He worked there until he was promoted to Head Night Custodian at Windy Hill Middle School in 1998. His duties included cleaning and buffing the floors and the gym, mowing and manicuring grass, working with machinery and equipment, and snow removal. In 1990, Adams filed discrimination charges against CCPS on the basis that he was not hired as Head–Night Custodian at Windy Hill. The charges were settled in 1998 and as part of the settlement Adams was promoted to the position of Head–Night Custodian.

Adams sought promotion to the position of Head Day Custodian three times in the Spring and Summer of 2000. Other candidates were deemed more qualified by CCPS and received these promotions. Adams asserts that the selection process for custodial positions has many deficiencies, including implementation problems regarding Article X of the "Agreement Between the Calvert Association of Educational Support Staff and the Board of Education of Calvert County" ("Article X").

The first promotion Adams applied for, and did not receive, was a vacancy for Head–Day Custodian at Mill Creek Elementary School ("Mill Creek"). Plaintiff submitted a letter in application for this position on May 16, 2000 and interviewed for the position. CCPS replied to Adams on June 15, 2000 that another applicant, Robert Hall, had been chosen. Hall is an African–American male older than Adams. Adams alleges that he was not selected in retaliation for the employment discrimination action that he filed in 1990. In June 2000, Adams applied for two other Head–Day Custodian positions that became vacant at approximately the same time. These positions were at Patuxent High School ("Patuxent") and St. Leonard Elementary School ("St. Leonard"). He was interviewed for both positions, but was awarded neither. The successful applicant at Patuxent was Steve Brooks ("Brooks"), an African–American male, and the successful applicant at St. Leonard was Wal-

lace Thacker ("Thacker"), a white male, both younger than Adams.

Adams was interviewed for all three positions, but received ratings that were lower than Hall, Brooks, and Thacker. Four people were involved in selecting the three successful applicants. Three of the four decision-makers were over age 50 at the time they rejected the application of the then–46 year old Adams. Brooks and Thacker were 35 and 34, respectively, when they received the promotions at issue. Adams asserts that the selections of Brooks and Thacker were acts of age discrimination and retaliation.[1]

## II. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de*

*France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex*, the Supreme Court stated:

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59

---

**1.** Plaintiff asserted a race discrimination claim in his complaint, but does not pursue it

in his opposition to summary judgment.

(4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### III. Analysis

Defendant moves for summary judgment on the grounds that: (1) Plaintiff has abandoned his Title VII claim with respect to race discrimination and it was not raised in his EEOC charge; (2) CCPS cannot be sued under the ADEA or § 1981 under the Eleventh Amendment; and (3) there is no evidence sufficient to support Plaintiff's contentions. Adams responds that: (1) the Eleventh Amendment does not bar his claims; (2) he did not abandon his retaliation claim from his EEOC charge; (3) he has made a *prima facie* case of retaliation; (4) he has rebutted CCPS's business justification for choosing Mr. Hall over him; (5) Adams has introduced evidence of a *prima facie* case of age discrimination under Title VII; and (6) he has rebutted CCPS's business justification on his age discrimination claim.[2]

### A. Race Discrimination claims—Title VII and § 1981

Plaintiff's complaint states "Title VII, 42 U.S.C. § 2000, and 42 U.S.C. § 1981, make it illegal for an employer to discriminate against its employees regarding the terms and conditions of employment on account of the person's race." Paper No. 1, ¶ 16. Defendant asserts that Plaintiff's Title VII race discrimination claim and § 1981 claim

ought to be dismissed because Plaintiff has abandoned them. In his deposition, Adams acknowledged that two of the three positions at issue were filled by African–American applicants and that he does not feel he was discriminated against on the basis of race as to any of the three of the positions. Paper No. 9, Ex. 1, pp. 65, 74–75. Plaintiff does not advance any argument in his opposition to Defendant's motion for summary judgment in support of his race discrimination claim. As it is Plaintiff's responsibility to confront the motion for summary judgment with evidence, and none has been provided in support of his race based discrimination claims, Plaintiff has failed to meet his burden of proof. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Accordingly, Defendant's motion for summary judgment will be granted with respect to Plaintiff's Title VII and 42 U.S.C. § 1981 race discrimination claims.

### B. Title VII Retaliation Claim

■ Plaintiff's complaint does not, explicitly, contain a retaliation claim. He contended in his opposition memorandum, however, that a retaliation claim was stated by the incorporation of his EEOC complaint, which did assert a retaliation claim, into the complaint. Defendant argues, first, that Plaintiff did not assert a Title VII retaliation claim and, second, that Plaintiff cannot establish a *prima facie* case of retaliation.

The court will assume that Plaintiff either has or can allege a retaliation claim. As will be seen, however, he has failed to forecast sufficient evidence to proceed. At his deposition, Adams stated that he is only asserting a retaliation claim with respect to the position at Mill Creek Ele-

---

**2.** Adams' complaint is not divided into numbered counts and his claims are listed under

Causes of Action in Paragraphs 15–20.

mentary School. Paper No. 9, Ex. 1, p. 65, 74–75. The elements of a *prima facie* case of retaliation are:

> (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action.

*Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). After plaintiff has presented a *prima facie* case, "the employer then has the burden of producing a legitimate nondiscriminatory reason for the adverse action, thereby rebutting the presumption of retaliation." *Id.* The only evidence Plaintiff presents in support of a causal connection between his EEOC complaint, settled in 1998, and the fact that he was not awarded the position at Mill Creek is the fact that both Dr. Martlett and Dr. Craft knew of the EEOC charge before the hiring decisions were made. Paper No. 12, p. 29.

The Supreme Court has recognized the limits of temporal proximity in stating a *prima facie* case:

> The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close," *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001) . . . .

Action taken (as here) 20 months later suggests, by itself, no causality at all. *Clark County School District v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The Settlement Agreement was signed between CCPS and Adams at the end of May 1998, and Adams applied for the Mill Creek position in June 2000, more than 24 months later. As the only causal connection offered in support of Plaintiff's Title VII retaliation claim, it is insufficient to establish a *prima facie* case. Accordingly, Defendant's motion for summary judgment will be granted with respect to Plaintiff's Title VII retaliation claim.

## C. Age Discrimination in Employment Act ("ADEA") Claim

### 1. Eleventh Amendment Immunity

Defendant asserts that it cannot be sued under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 as Congress has not validly abrogated and the State has not waived its Eleventh Amendment immunity under federal law. *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Plaintiff concedes that the ADEA does not abrogate a State's sovereign immunity, but argues that CCPS is not an arm of the state. CCPS responds that, under Maryland law, county boards of education are considered an arm of the state and, as the board of education operates the County's public school system, it is entitled to sovereign immunity under the Eleventh Amendment.[3]

---

**3.** Plaintiff contends that the school district, and not the board of education, is the Defendant. The school district, however, does not exist as a separate entity for purposes of suit. The Maryland Education Code states that "[t]here is a county board of education for each county school system." MD.CODE ANN., EDUC. § 3–103 (1978) and that "[a] county board: . . . (2) May sue and be sued." MD. CODE ANN., EDUC. § 3–104(b) (1978). The only reference in the code to a school districts appears in the subtitle regarding Prince George's County. *See* MD.CODE ANN., EDUC. § 3–1001 (1998). The Subtitle governing Calvert County does not mention school districts. *See* MD.CODE ANN., EDUC. § 3–301–3–304 (2001). Thus, to be viable at all, the suit against the Calvert County Public Schools must be treated as a suit against the Calvert County Board of Education.

The Eleventh Amendment protection extends to state agents and instrumentalities, and not merely to the state itself. The determination of whether a particular entity is to be treated as an arm of the state is a federal question. *Cash v. Granville County Board of Education*, 242 F.3d 219, 222 (4th Cir.2001).

In *Cash*, 242 F.3d at 223, the court discussed both the process and the substance to determine "whether a governmental entity is an arm of the State or more like a county or municipality." The first question is (1) "whether a judgment against the governmental entity would have to be paid from the State's treasury." If the answer is yes, then Eleventh Amendment immunity applies and consideration of other factors is unnecessary. *Id.* at 223. If the answer is no, that factor will weigh against the finding of immunity, but the entity may still enjoy sovereign immunity "if the judgment would adversely affect the dignity of the State as a sovereign and as one of the United States." *Id.* at 224.

In order to determine the "nature of the entity and its relationship with the State", courts must look to three factors:

(1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns—whether local or statewide—with which the entity is involved; and (3) the manner in which State law treats the entity.

*Id.*

Both state and federal courts in Maryland, both before and after *Cash*, have "consistently held that the county boards of education are agencies of the state" and that "[t]he Maryland statute clearly supports this conclusion." *Jones v. Frederick County Bd. of Educ.*, 689 F.Supp. 535, 537 (D.Md.1988).

Maryland law creates the county boards of education and governs their composition and membership. The statute requires the county boards to carry out the applicable provisions of [the Education Code of Maryland] and the by-laws, rules, regulations, and policies of the State Board [of Education]. The county boards must obtain the state's approval regarding the establishment of schools, acquisition or disposition of property, construction or renovation of buildings, and curriculum. The state appropriates substantial funds to support the county boards. In return, the county boards must acquiesce to an annual audit and submit an annual budget to the state.

*Id.* at 537–38 (internal citations omitted). In addition, Maryland law has consistently treated local school boards as agencies of the state. *See, e.g., Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.*, 358 Md. 129, 747 A.2d 625 (2000); *Montgomery County Educ. Assoc. v. Board of Educ. of Montgomery County*, 311 Md. 303, 534 A.2d 980 (1987); *Board of Educ. of Prince George's County v. Prince George's County Educators' Ass'n*, 309 Md. 85, 522 A.2d 931 (1987). *See also Biggs v. Board of Educ. of Cecil County*, 2002 WL 370195, at *7, —— F.Supp.2d ——, —— (D.Md.2002) (holding that "the Board of Education for Cecil County is a state actor under the Eleventh Amendment"). Therefore, the court concludes that CCPS is immune from suit for monetary damages under the ADEA.

### 2. Failure to State a Claim

Even if CCPS were not immune, Adams has failed to make out a claim of age discrimination under the ADEA. Because Adams does not allege that there is any direct evidence of age discrimination on the part of Defendant, Plaintiff's claims

will be analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The elements of a *prima facie* case for failure to promote are:

(1) he is a member of a protected group;
(2) he sought the position in question;
(3) he was qualified; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination.

*Taylor v. Virginia Union University*, 193 F.3d 219, 245 (4th Cir.1999). Once a Plaintiff establishes a *prima facie* case that failure to promote was discriminatory, the Defendant must present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir.1999). Plaintiff retains the ultimate burden of proving by a preponderance of the evidence that the real reason for the employment decision at issue was unlawful discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ Defendant asserts that Adams is not able to establish the fourth element, that the circumstances do not give rise to an inference of unlawful age discrimination. Adams has indisputably shown the first three elements. With regard to the fourth element, Plaintiff has met his initial burden by showing that the people selected for the positions, Brooks and Thacker, were at least eleven years younger. Plaintiff "therefore has established a *prima facie* case of age discrimination based on his failure to be promoted" to the positions of Head Day Custodian. *Causey v. Balog*, 929 F.Supp. 900, 910 (D.Md.1996).

■ At this point, the burden shifts to Defendant to offer a nondiscriminatory reason why the positions were not awarded to Adams. Defendant's claim that Brooks and Thacker received the promotions based on the judgment of the decision makers that they were better qualified meets its burden of production for summary judgment purposes. *See Hicks*, 509 U.S. at 506–08, 113 S.Ct. 2742.

The burden then shifts back to Plaintiff "to point to specific facts indicating that this stated justification represents but a pretext for discrimination." *Causey*, 929 F.Supp. at 910. Plaintiff asserts that the interview and selection process is fraught with defects, asserting that interviewers do not use uniform standards and fail to apply Article X appropriately. Paper No. 12, p. 34. However, this is not evidence that "the selection process was designed to, or in fact did, discriminate against [older people] in general or Plaintiff in particular because he is an [older person]." *Langerman v. Thompson*, 155 F.Supp.2d 490, 498 (D.Md.2001). The fact that the interview process was, to some extent, subjective, does not make the process discriminatory. *Vaughan v. Metrahealth Companies, Inc.*, 145 F.3d 197, 204 (4th Cir.1998), *rev'd on other grounds, Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "An employer is free to create its own standards for selecting candidates for a position as long as such standards are not a mask for discrimination." *Langerman*, 155 F.Supp.2d at 500. The ADEA "is not meant to remedy every procedural flaw that exists in an employer's selection process." *Id.* Plaintiff fails to show that the interviewers considered any unlawful criteria or that their reasons for selecting Brooks and Thacker, i.e. their interview

performances and the fact that they were the Head–Night Custodians at the schools in question, served as a mask to discriminate against him. Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's ADEA claim.

## IV. Conclusion

For the foregoing reasons, the court will grant Defendant's motion for summary judgment. A separate order will be entered.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this ____ day of May, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion for summary judgment under Fed.R.Civ.P. 56 BE, and the same hereby IS, GRANTED as to all counts;

2. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Defendant, and against Glenwood Adams, on all counts; and

3. The Clerk transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.