**Tamara A. JACKSON Plaintiff**

v.

**STATE of Maryland, et al., Defendants.**

**No. CIV. A. JFM–99–73.**

United States District Court,
D. Maryland.

Oct. 16, 2001.

---

Harry M. Walsh, Jr., Walsh and Phillips, Easton, MD, William Hambler Jones, Cambridge, MD, for plaintiff.

Anthony K. Waters, Assistant Attorney General, Baltimore, MD, Lisa A. Barkan, James C. Anagnos, Baltimore, MD, J. Joseph Curran, Jr., Office of Attorney General, Baltimore, MD, for defendants.

### MEMORANDUM

MOTZ, District Judge.

Plaintiff, Tamara A. Jackson, has brought suit against Defendants, State of Maryland, Dorchester County Health Department ("Department"), Roger L. Harrell, William C. Forlifer, and Robert McClain, Jr. Defendants' previous motion to dismiss was granted in part. Plaintiff's allegations of violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983, which include claims of hostile environment racial discrimination, disparate discipline, failure to promote and retaliation, were not dismissed. Defendants have now moved for summary judgment on these claims and the motion will be granted.

### I.

Plaintiff is an African–American female who was employed full-time as a sanitarian at the Dorchester County Health Department, Environmental Health Division ("Division"), from August 1994 through October 2, 1998. Plaintiff was responsible for inspecting local restaurants and other facilities to insure compliance with Maryland health regulations. Defendant Harrell served as the health officer of the Department and was the de facto head of that agency. Defendant Forlifer was the Director of the Division. Defendant McClain was a supervisor in the Division.

Jackson began her employment as a Sanitarian I and was promoted to Registered Sanitarian III ("R.S.III") on April 9, 1997 after receiving evaluations that rated her performance in various categories as "satisfactory" and "superior." She was one of three R.S. IIIs in the Division; the other two were white males. Jackson was the only African–American female in the Department.

In October 1995, Plaintiff requested permission to work part-time in a retail store. She alleges that prior to granting her permission, the Department required her to go through a lengthy approval process. At the same time, McClain, her supervisor, had a part-time job selling produce.

In August 1996, McClain ordered Plaintiff to reveal her home telephone number to a restaurant that she was assigned to inspect. No other employees were required to disclose this personal information. Plaintiff ultimately did not have to disclose her telephone number due to intervention by Stacy Beauchamp, a former director of the Division.

Plaintiff alleges that in December 1996, McClain ordered her to stuff envelopes, a duty not found in her job description and not required of other similarly situated employees. According to Carla Neugroschel, personnel liaison for the Department, and to the "Position Description Form" for Plaintiff's position, Plaintiff's job responsibilities included a "catch-all" requirement to perform general duties and functions as required. Neugroschel Aff. ¶¶ 4, 5, Ex. 2, 3.

On January 27 and 28, 1997, Plaintiff reported to work to find that the building's heating system had failed. Forlifer told Plaintiff that she was better off out in the field performing inspections. He ordered her out of the office into the winter weather while allowing the other sanitarians to stay in the office. In her deposition testimony, Plaintiff did not conclude that such an order contributed to a hostile work environment. Pl.'s Dep. at 66–67.

In a February 1997 staff meeting attended by several of the defendants, one of Plaintiff's co-workers, speaking about con-

cerns with Plaintiff's water sampling procedures, said, "I guess we'll have to take her in the back room and beat her so she'll use the right form for water sampling." In her deposition, Plaintiff stated that she was not certain that this comment was based on her race. *Id.* at 67–68.

In August 1997, Plaintiff was subjected to two disciplinary meetings with McClain and a former director because she had used her personal vehicle during work hours. Plaintiff alleges that all similarly situated employees also used their personal vehicles during work hours, but only Jackson was "required to follow the 'unwritten' rule." In her deposition, Plaintiff stated that she was not able to conclude that these disciplinary meetings were racist. *Id.* at 81.

In September 1997, McClain presented Plaintiff with a new "Position Description," which contained additional duties to those being performed by, and expected of, Plaintiff at the time. The Department wrote the new Position Description to comply with the Maryland Performance Planning and Evaluation Program passed by the General Assembly. The Department's personnel liaison explained in writing to Jackson that this process authorized the Department to reallocate any job duties within the Department if it was determined that cross-training or reallocation was necessary for an increase in efficiency or effectiveness in the operation of the Department, provided that the reallocated duties were within the scope of duties to be performed by a particular classification. Neugroschel Aff. ¶¶ 6, 8. Jackson refused to sign the new description because she was untrained and/or unqualified to perform the additional tasks. The personnel liaison had advised Plaintiff that she had the option of refusing to sign the Position Description with the intention of entering into mediation over the matter, but that she would eventually have to sign the description. *Id.* Ex. 6 at 3. McClain disciplined her, accusing her of "insubordination" in a counseling memo. Jackson was threatened with additional charges of "insubordination" if she refused to sign the new description. A copy of this counseling memo was provided to Forlifer.

Plaintiff filled out a detailed Equal Employment Opportunity ("EEOC") Charge Information Form on September 29, 1997.

In November 1997, the State of Maryland Department of Health and Mental Hygiene revised the standards for Registered Sanitarian classification levels. Forlifer forwarded paperwork to the other two R.S. IIIs so that they could be reclassified as R.S. IVs under the revised standards. He did not forward the paperwork to Plaintiff. When she learned of the reclassification through contacts at other Health Departments, Plaintiff asked Forlifer about it. Forlifer told her that he would investigate and follow up with her; however, he did not do so until approximately September 1998. The reclassification would have resulted in an increase in pay for Plaintiff of nearly $3,000 a year. The Maryland Department of Health and Mental Hygiene classifies an R.S. IV as someone that does full performance level staff work. This means that a sanitarian is cross-trained and able to conduct inspections as required by the Code of Maryland Regulations either without direct supervision or with general supervision. Types of inspections conducted by sanitarians include swimming pools, food service facilities, camps, sewage disposal systems and for rabies. Plaintiff needed direct supervision to conduct sewage system construction inspections and camp inspections. McClain Aff. ¶ 12.

On December 8, 1997, McClain ordered Plaintiff to "gas up" her departmental vehicle which he was about to use. Plaintiff alleges that such duties are outside the

scope of her employment and are not expected of similarly situated employees. The Department's fleet vehicle fueling policy specifies that all vehicle gas tanks must be maintained at least half full. *Id.* ¶ 4; Neugroschel Aff. ¶ 3, Ex. 1. According to McClain, he needed to use Plaintiff's vehicle the next day for Department business and was merely enforcing the Department policy. McClain Aff. ¶ 4.

Plaintiff filed a discrimination charge with the EEOC and the Maryland Commission on Human Relations on December 10, 1997. In her complaint, she alleged a continuing course of discrimination and listed December 5, 1996 as the earliest date that discrimination took place and September 18, 1997 as the latest.

Plaintiff alleges that on December 23, 1997, McClain ordered the Department computer programmer, Doug Higgins, to withhold computer assistance from her. She claims that the programmer complied with McClain's alleged order. On June 23, 1998, McClain wrote a memorandum to Plaintiff suggesting that she seek assistance from Mr. Higgins in installing a computer program. *Id.* ¶ 5.

Plaintiff alleges that on January 8, 1998, McClain falsified her leave card to indicate that she was absent without leave, which was not the case. McClain responds that Plaintiff requested leave on January 7, 1998 and then left without getting his approval. When he saw the request the next day, he signed it and made a notation that she had taken unscheduled leave the previous day without approval. *Id.* ¶ 6. Plaintiff also alleges that on January 12, 1998, McClain approved Plaintiff's request to arrive one-half hour late to work. When she arrived one-half hour late, McClain marked her as being one-half hour late.

In April 1998, Plaintiff learned that McClain had been eavesdropping on her telephone conversations and reading through her computer directory. All sanitarians sat in one large room and all conversations could be overheard. If Plaintiff wanted to make a personal call, there was a private office where she could make it. *Id.* ¶ 7. Defendants contend that any notes McClain took regarding Plaintiff's conversations and any review by McClain of Plaintiff's computer files were done as part of his supervision responsibilities. Plaintiff had the option of protecting her files with a password but she did not do so. *Id.* ¶ 8.

For a week in May 1998, McClain altered Plaintiff's work schedule so that she lost compensatory time and dinner expenses. Such action was taken so that Plaintiff could take a pool operator's training course, which would improve her job performance. In a February 17, 1998 memorandum to Plaintiff, Defendant McClain detailed the change to Plaintiff and explained that "this arrangement will minimize compensatory time and cost associated with the course, maximize resources available to the Department for training, while reducing inconvenience and work day length for [Plaintiff]." He also told her to see him if she had any questions regarding the changes. *Id.* Ex. 4.

On May 7, 1998, Plaintiff met with McClain and Forlifer concerning her latest performance evaluation. This evaluation, unlike previous ones, showed several deficiencies in Plaintiff's job performance. Plaintiff alleges that McClain and Forlifer were unable to provide her with an explanation for the ratings. McClain claims that he did provide a verbal justification for his ratings and that at Plaintiff's request he followed up in writing. A seven-page July 8, 1998 memorandum from McClain to Plaintiff sets out in great detail non-discriminatory justifications for each rating that Plaintiff received. *Id.* ¶ 10. According to McClain's memorandum, Plaintiff performed several inspections im-

properly or not at all. She refused to communicate with her supervisor or cooperate with support personnel regarding these inspections and she made her coworkers uncomfortable by asking them work-related questions without providing background information or context. The memorandum also suggested many constructive actions Plaintiff could take to improve her performance. *Id.* Ex. 7. Subsequent to the evaluation, Plaintiff was not demoted, her duties were not changed and her pay was increased beginning with the pay period ending on July 14, 1998. *Id.* ¶ 11.

During the spring of 1998, Jackson claims she was subjected to continuous door slamming, silence from co-workers at the behest of McClain, and periods where the entire office staff would leave when she was in the office.

Plaintiff alleges that several times during her employment, she clashed with McClain when she attempted to fulfill her expected duties of enforcing health regulations pursuant to the Code of Maryland Regulations. McClain told her that she needed his approval to make business calls, mail correspondence, and perform other similar duties. No other employees were required to have correspondence approved prior to sending. McClain asserts that such procedures were required because of Plaintiff's failure to communicate important information to him regarding inspections of food operations and the advice Plaintiff gave to those facilities. He explained in a February 12, 1998 memorandum that his request of Plaintiff was made to help him, "through the orderly flow of information through the proper channels, to be aware of proposed special

or unique facilities, problems, etc. that occur in the programs that [he] supervise[s], assistance needed, as well as any training that [Plaintiff] and/or [McClain] may need to fulfill Department responsibilities and services." *Id.* ¶ 12, Ex. 10.

On October 2, 1998, Plaintiff resigned. Her new job requires more strenuous physical activity and pays approximately ten thousand dollars less than the R.S. III position. She filed her complaint with this court on January 12, 1999.

## II.

■ Three of the alleged incidents relied on by Plaintiff in making her claims are time-barred for the purposes of Title VII analysis.[1] 42 U.S.C. § 2000e–5(e)(1) requires that a charge be filed within 300 days of the alleged unlawful employment practice. Any incidents that occur prior to this time-period "are time-barred unless they can be related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation." *Beall v. Abbott Labs.,* 130 F.3d 614, 620 (4th Cir.1997) (*quoting Jenkins v. Home Ins. Co.,* 635 F.2d 310, 312 (4th Cir.1980) (per curiam)). Incidents that occur more than 300 days prior to the filing of Plaintiff's charge cannot be considered as part of a continuing violation until Plaintiff shows that an actual violation has occurred based on incidents that occurred less than 300 days prior to the filing of her charge. *Id.* For this reason, Plaintiff's allegations regarding her request to get a part-time job, Defendant McClain's order that Plaintiff reveal her home telephone number to a restaurant and his order that she stuff envelopes should not be considered in de-

---

**1.** For the purposes of this case, the substantive legal analysis to be applied to Plaintiff's claims under Title VII and § 1983 are the same. *Fisher v. Md. Dep't of Housing and Comm. Dev.,* 32 F.Supp.2d 257, 261 (D.Md.

1998) *aff'd* 166 F.3d 1208, 1998 WL 887020 (4th Cir.1998). However, the statute of limitations that apply to Title VII and § 1983 claims are different.

termining whether Defendants violated Title VII. In addition, the allegation regarding Plaintiff's request to get a part-time job should not be considered for purposes of determining whether Defendants violated § 1983 because it occurred more than three years before Plaintiff filed suit. *See Jones v. Frederick County Bd. of Educ.*, 689 F.Supp. 535, 538–39 (D.Md.1988) (holding that Maryland's 3 year statute of limitations applies to § 1983 claims).

### III.

■ To prove a claim of a hostile work environment, Plaintiff must show that: "(1) the harassment was unwelcome; (2) the harassment was based on [her] race ...; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). It may be that Plaintiff has endured an unpleasant workplace and Defendants' conduct and judgment may have been questionable at times. However, Plaintiff has shown little, if any, indication of racial animus by Defendants and any harassment was not "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Id.* For this reason, Defendant's motion for summary judgment on Plaintiff's claim of hostile environment racial discrimination will be granted.

### A.

■ Most of Plaintiff's allegations involve personal grievances with supervisors and fellow employees or disputes regarding Plaintiff's work performance. Plaintiff has presented no direct or inferential connection between these allegations and her race and therefore these allegations cannot support a claim of hostile environment racial discrimination. *See Smith v. Allied Sys., Ltd.*, 2000 WL 708909, at *5 (D.Md.

2000) *aff'd* 232 F.3d 889 (4th Cir.2000) (rejecting claim of hostile environment discrimination where plaintiff offered "no evidence that the harassment he complains about was based on race"); *Settle v. Baltimore County*, 34 F.Supp.2d 969, 1003 (D.Md.1999) *aff'd sub nom. Harris v. Earp*, 203 F.3d 820, 2000 WL 51282 (4th Cir.2000), *Settle v. Baltimore County Police Dep't*, 203 F.3d 822, 2000 WL 51283 (4th Cir.2000) (refusing to consider allegations when they are "racially neutral, and there is no evidence in the record that the underlying acts and omissions ... occurred because [plaintiff] is an African–American"); *Porter v. Nat'l Con-Serv, Inc.*, 51 F.Supp.2d 656, 659 (D.Md.1998) (refusing to consider co-worker's threat with a pair of scissors in hostile environment claim because there was no evidence that the threat was related to plaintiff's race).

Several of Plaintiff's allegations accuse the Defendants of treating her differently than her white co-workers, inferring that her treatment was based on her race. However, she has offered only general allegations, unsupported by specific facts regarding how or when her co-workers were treated differently. Without more than these vague claims of differing treatment, Plaintiff has failed to show that these incidents were based on her race. *See Causey*, 162 F.3d at 801 (holding that plaintiff's conclusory statements of differential treatment of similarly situated employees, without specific evidentiary support, cannot support an actionable claim for harassment); *Carter v. Ball*, 33 F.3d 450, 461–62 (4th Cir.1994) (holding that general allegation that supervisor reprimanded African–American plaintiff publicly but spoke with his white co-workers in private does not establish an actionable claim of harassment without substantiation by accounts of specific dates, times or circumstances).

**B.**

 Even if Plaintiff could show that Defendants' actions were based on her race, Defendants' motion for summary judgment must still be granted because Plaintiff has failed to show that the alleged "harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Causey*, 162 F.3d at 801. As the Court in *Norris v. Anderson* explained:

In determining whether harassment is sufficiently severe or pervasive as to constitute a "hostile environment, the court must look at all the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely consists of offensive utterances; and (4) whether it unreasonably interferes with the employee's work performance.

125 F.Supp.2d 759, 766 (D.S.C.2000). The standard for proving an abusive work environment is intended to be a very high one. *Porter*, 51 F.Supp.2d at 659; *see also Norris*, 125 F.Supp.2d at 766 ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" ' (citation omitted)).

Even when her allegations are viewed as a whole, Plaintiff is not able to meet the heavy burden required to prove hostile environment racial discrimination.[2] Plaintiff has pointed to a series of, at best, loosely related actions that she perceived to be hostile to her based on her race. However, Plaintiff's allegations seem to be better characterized as a case of friction in the workplace that was exacerbated by Plaintiff's difficulties in performing her assigned job responsibilities.[3] Plaintiff does allege a fair number of incidents that might seem suspicious, but these alleged incidents occurred sporadically over a long period of time. Moreover, there is nothing in the record to suggest that Plaintiff considered the incidents severe. A recent opinion in this District offers a good characterization of Plaintiff's case:

As a matter of law ... the facially neutral acts plaintiff finds subjectively unwelcome and hurtful are (1) the normal incidents of supervision (and supervision-even aggressive and unfriendly supervision-does not equate to harassment), or (2) viewed objectively, as they must be, acts which are episodic and sporadic in character so as not to support a rational inference that a reasonable member of plaintiff's protected class would find his or her workplace environment so abusive as to alter the terms and conditions of employment or interfere with one's ability to perform [one's] duties.

---

**2.** Plaintiff takes issue with Defendants' strategy of addressing each of Plaintiff's allegations individually in an effort to minimize their impact, insisting that "the court is to view the totality of the circumstances." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2. However, "a prima facie case of discrimination ... is not established simply by counting allegations, especially where the principal support for those allegations consists primarily, if not solely, of the prior statements of the alleged victims." *Settle*, 34 F.Supp.2d at 985.

**3.** This is well-illustrated in McClain's memorandum to Plaintiff regarding her negative performance evaluation. In his memorandum, McClain details many interpersonal conflicts between Plaintiff and her colleagues that related to Plaintiff's job performance. McClain Aff. Ex. 7. For example, on April 4, 1997 and December 4, 1997, Plaintiff hung up on her supervisor (McClain) during instructional telephone conversations. In addition, when Plaintiff reported that her thermometer was malfunctioning and McClain asked her to bring it to him for evaluation, Plaintiff responded: "From the looks of you, your [sic] the one that needs the walk.". *Id.* Ex. 7 at 5.

*Settle,* 34 F.Supp.2d at 974. For these reasons, Defendants' motion for summary judgment on Plaintiff's hostile environment discrimination claim will be granted.

## IV.

■ Since Plaintiff has offered no direct or circumstantial evidence of a discriminatory intent by the Defendants, Plaintiff's three other claims—disparate discipline, failure to promote and retaliation—must be considered under the burden-shifting proof scheme established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. Under this scheme:

> The plaintiff employee must first prove a prima facie case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case "drops out of the picture" and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.

*Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 959 (4th Cir.1996) (citations omitted). Plaintiff has not met her burden under the proof scheme. On all three of her claims, she has either failed to establish her prima facie case or failed to show that legitimate reasons given by Defendants were just a pretext for discrimination. For these reasons, Defendants' motion for summary judgment on all three claims will be granted.

## A.

■ In order to establish a prima facie case of disparate discipline racial discrimination, Plaintiff must show:

> (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against other employees.

*Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993) *(citing Moore v. City of Charlotte,* 754 F.2d 1100, 1105–06 (4th Cir. 1985)). Plaintiff's claim of disparate discipline is based on two incidents, neither of which are sufficient to meet her burden of establishing a prima facie case of disparate discipline.

■ Plaintiff claims that in August 1997, she was subjected to two "disciplinary meetings" for using her personal vehicle during work hours, despite the fact that all similarly situated employees violated this rule without being disciplined. Even if I assume that these meetings were disciplinary measures, which Defendants contest, Plaintiff's claim fails because she has not specified any instance when a similarly situated employee violated the rule against driving a personal vehicle during work hours. Perforce, she has not shown that such an employee was or was not disciplined.

■ Plaintiff also claims that she was the victim of disparate discipline when she refused to sign her new Position Description in September 1997 and was given a counseling memorandum that accused her of insubordination. Plaintiff has not presented evidence of any instance of conduct by similarly situated employees outside of the protected class. There is no indication in the record that any other registered sanitarian refused to sign the new Position Description or engaged in other similar conduct. Given the silence of the record on these issues, Plaintiff has failed to establish her prima facie case and Defendants' motion for summary judgment on

Plaintiff's disparate discipline claim will be granted. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported . . . an adverse party . . . must set forth specific facts showing that there is a genuine issue for trial.").

## B.

 In order to establish a prima facie case of failure to promote, Plaintiff must show that: (1) she is a member of a protected group; (2) she sought the position in question; (3) she was qualified; (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination. *Causey v. Balog,* 929 F.Supp. 900, 909 (D.Md.1996) *aff'd* 162 F.3d 795 (4th Cir.1998). Plaintiff's claim of failure to promote is based on the fact that in November of 1997, the State of Maryland reclassified its Registered Sanitarian positions. Plaintiff claims that all R.S. III positions were entitled to a reclassification to an R.S. IV after completing the paperwork. She alleges that Defendants gave the paperwork to the two white R.S. IIIs but did not give the paperwork to her.

It may be that Defendants should have handled the reclassification in a more professional manner when it was mandated by the State. Nonetheless, Plaintiff has failed to establish a prima facie case of failure to promote. She has not established that she was qualified for the position of R.S. IV. In November of 1997, there was a reclassification of registered sanitarians. However, Plaintiff offers no support for her contention that she was entitled to an automatic reclassification from an R.S. III to R.S. IV. Defendants have produced a memorandum from the State Department of Health and Mental Hygiene explaining the new classification scheme. An affidavit from Defendant McClain explains that an R.S. IV must be capable of full performance level staff work. Defendants contend Plaintiff could not perform sewage system construction or camp inspections without direct supervision, making her unqualified for the position of R.S. IV. Plaintiff has not disputed Defendants' contentions. To the contrary, Plaintiff refused to sign a new Position Description because she felt that she was not capable of performing all of the duties that it would require of her as an R.S. III. Summary judgment will therefore be granted for Defendants on Plaintiff's failure to promote claim.

## C.

 In order to establish a prima facie case of retaliation, Plaintiff must show that: "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Von Gunten v. Md.,* 243 F.3d 858, 863 (4th Cir.2001). I have considered all of Plaintiff's allegations that occurred after she initiated contact with the EEOC on September 29, 1997 as being possible adverse employment actions that might establish a prima facie case of retaliation. Most of these allegations do not satisfy the second prong of the prima facie case. Moreover, Plaintiff has failed to establish a causal connection to satisfy the third prong of the prima facie case on several others. For the one allegation that establishes a prima facie case of retaliation, Defendants have offered a legitimate non-discriminatory justification, and Plaintiff has not met her burden of showing this reason to be pretextual.

### 1.

 In order to be considered an adverse action under the second prong of the prima facie case, an incident must have "adversely [a]ffected 'the terms, conditions, or benefits' of the plaintiff's employment." *Id.* at 865 (citation omitted).

Viewing the evidence in the light most favorable to the Plaintiff, three of her allegations satisfy the second prong of the prima facie case: the November 1997 failure to promote, the February 12, 1998 order that she get approval from McClain before sending mail or making phone calls and the May 1998 alteration in her schedule. While troubling, Plaintiff's other allegations regarding "gassing-up" her state vehicle, a short-term denial of computer assistance, isolated disagreements over small amounts of leave, "eavesdropping" by McClain and a poor performance evaluation in May of 1998 did not adversely affect the terms, conditions or benefits of her employment and, therefore, do not satisfy the second prong of the prima facie case. *See generally id.* at 869 ("[T]erms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from a state agency's disciplinary procedures.") Among these allegations, Plaintiff focuses on the poor evaluation she received in May of 1998, claiming that it denied her a promotion and an accompanying raise. However, a poor evaluation by itself, even one that seems suspicious due to its departure from previous evaluations, is not an adverse action that establishes a prima facie case of retaliation, *Settle,* 34 F.Supp.2d at 1009, and there is nothing in the record that indicates that this performance evaluation was linked to a missed opportunity for promotion.

## 2.

Plaintiff has not established the third prong of a prima facie case of retaliation for two of the three adverse employment actions she has alleged. She has not shown a causal connection between her protected action and either the November 1997 failure to promote or the May 1998 schedule alteration. The February 1998 order by McClain to Plaintiff to get his approval before sending mail or making phone calls is the only allegation where a causal connection exists and a prima facie case of retaliation has been established.

Often, temporal proximity between a protected activity and an adverse employment action has been found sufficient to establish a causal connection. *See Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir.1998) ("Normally, very little evidence of a causal connection is required to establish a prima facie case. In fact, we have held that merely the closeness in time between a filing of a discrimination charge and an employer's firing an employee is sufficient to 'make a prima facie case of causality." (citations omitted)). The February 12, 1998 order to Plaintiff to have McClain approve all of her correspondence and phone calls occurred soon after Defendants received Plaintiff's charge of discrimination from the EEOC in January of 1998.[4]

Temporal proximity is, however, insufficient to establish a causal connection when there has been no showing that a defendant knew that Plaintiff had engaged in the protected activity. *See Tinsley,* 155 F.3d at 444 (holding that there was no causal connection shown where there was no evidence that supervisor even knew

4. On the other hand, the May 1998 alteration in Plaintiff's schedule is not close enough temporally to infer a causal connection. *See Vandevander v. St. Mary's County Sheriff's Office,* 2001 WL 589989, at *15 (D.Md.2001) (holding that a nearly five-month lag between plaintiff's protected activity and adverse employment action is too long to infer a causal connection). Since Plaintiff has offered no other evidence to support the existence of a causal connection, she has failed to establish a prima facie case of retaliation regarding this allegation.

that plaintiff had filed a complaint). In this case, Defendants were not notified by the EEOC of Plaintiff's complaint until January 1998. Plaintiff has offered no evidence that Defendants knew of Plaintiff's initial contact with the EEOC in September of 1997, when it did not promote her in November of 1997. The record does not support any other basis for establishing a causal connection between the failure to promote and Plaintiff's protected activity.

### 3.

■ Defendants have offered a legitimate, non-discriminatory reason for McClain's order that Plaintiff get his approval before making phone calls or sending correspondence. McClain explained in a memo to Plaintiff that the new procedure was required because of Plaintiff's failure to communicate important information to him regarding inspections of food operations and the advice Plaintiff gave to those facilities. McClain believed that this new procedure would enable both him and Plaintiff to be able to perform their jobs better. Under the *McDonnell Douglas* proof scheme, Plaintiff must show that the reasons offered by Defendants are a pretext for discrimination. Plaintiff has offered no such evidence. Accordingly, Defendants' summary judgment on Plaintiff's retaliation claim will be granted.[5]

A separate order effecting the rulings made in this memorandum is being attached herewith.

### ORDER

For the reasons stated in the accompanying memorandum, it is, this *16th* day of October 2001 ORDERED:

1. Defendant's Motion for Summary Judgment is granted; and

2. Judgment is entered in favor of Defendant against Plaintiff.

---

**5.** Although I do not need to reach this step in the analysis, Defendants also offer legitimate, non-discriminatory reasons for not promoting Plaintiff in November 1997 and changing her work schedule for one week in May 1998. Plaintiff has made no argument that these reasons were a pretext for discrimination.