Janet M. ALLEN, Plaintiff,

v.

Donald H. RUMSFELD, Secretary, U.S. Department of Defense, Defendants.

No. CIV.A. AW–01–2501.

United States District Court, ·D. Maryland.

July 15, 2003.

698

Ariana Wright Arnold, Paul Edwin Soeffing, Neil R. White, Office of the United States Attorney, Baltimore, MD, for defendants.

Cullen Patrick Cowley, The Cowley Law Office, Greenbelt, MD, for plaintiff.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

Currently pending before the Court is the motion to dismiss and for summary judgment [1] [Paper No. 38] filed by Donald

---

1. Defendant's entire motion will be treated as one for summary judgment. Defendant's claim that Plaintiff's failure to exhaust admin-

Rumsfeld, Secretary, U.S. Department of Defense ("Defendant"). Plaintiff alleges in Count I of her Complaint that Defendant discriminated against her on the basis of her disability in violation of the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq*, and retaliated against her for having engaged in protected activity.[2] Plaintiff alleges in Count II of her Complaint that Defendant discriminated against her on the basis of her race and retaliated against her for having engaged in protected activity, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. The motion has been fully briefed by both parties. No hearing is deemed necessary. *See* D. Md. R. 105.6. Upon consideration of the arguments made in support of, and opposition to, the motion, the Court makes the following determinations.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an African–American, began working for the Army and Air Force Exchange Service ("AAFES") at its Bolling Exchange in February 1990. She worked in the cashier's cage of the main Store, which was a department Store that sold clothing. Plaintiff cashed checks for customers, counted money in the vault, and handled money orders. In March 1997, Plaintiff was promoted to first line supervisor. As first line supervisor, Plaintiff ordered money, constructed employees' work schedules, and completed employee performance evaluations. Plaintiff supervised approximately six employees.

Plaintiff has had a back condition since 1992 and suffers from asthma and bronchial spasms she claims developed in 1996 while working in the cashier's cage at the Bolling Exchange. Bolling Exchange management responded to Plaintiff's asthma and bronchial ailments by replacing old carpeting, cleaning vents, and outfitting the cashier's cage with an air filter and an air humidifier.

It was common for Plaintiff and other Bolling Exchange employees to cash checks at the Bolling Cashier's Cage (supervised by Plaintiff). An investigation commenced in May 1998 revealed that Plaintiff had insufficient funds in her account to cover multiple cashed checks which had caused these checks to bounce. In July 1998, Plaintiff was issued an Advance Notice of Separation for Cause and in August 1998, based on the results of the investigation, her employment was terminated.

Plaintiff appealed her August 1998 termination through the AAFES internal appeal process. At a hearing, Plaintiff's ex-husband[3] supported Plaintiff's assertion that she was not at fault for the bounced checks because he was responsible for the insufficient amount of money in her account and had concealed this by opening and discarding the notification of the bounced checks that was sent to Plaintiff. However, evidence presented at the hearing also showed that Plaintiff had violated AAFES procedures when cashing her own checks and when carrying out her supervisory responsibility to safeguard AAFES cash assets. Concluding that Plaintiff had not intended to bounce checks, but that she had mishandled thousands of dollars of

---

istrative remedies deprives this Court of subject matter jurisdiction is erroneous. *See Zografov v. V.A. Medical Center,* 779 F.2d 967, 968–69 (4th Cir.1985)(failure to exhaust administrative remedies is not a jurisdictional bar for federal employees seeking relief under Title VII); *Harris v. Evans,* 221 F.Supp.2d 635, 636 (D.Md.2002).

2. As there is no proper retaliation claim under the Rehabilitation Act, only Plaintiff's Title VII retaliation claim will be addressed.

3. Plaintiff and her ex-husband were in the process of separating during May and August of 1998.

AAFES money, causing the loss of management's trust, the Hearing Examiner recommended that Plaintiff be reinstated with a disciplinary downgrade to a non-supervisory, regular full-time position. The Appellate Authority reinstated Plaintiff in December 1999 with the recommended downgrade, restored lost leave she had taken from May 1998 through August 1998, and gave her back pay at her new, downgraded pay rate from the date of her separation to the date of her reinstatement.

In September 1998, Plaintiff contacted an Equal Employment Opportunity (EEO) counselor and claimed that her termination was discriminatory, yet she alleged no EEO basis for the discrimination. Plaintiff filed a formal complaint of discrimination that was dismissed by the AAFES as untimely because Plaintiff missed the 15 day filing deadline. The Equal Employment Opportunity Commission (EEOC) Office of Federal Operations (OFO) affirmed the dismissal in a decision issued on January 31, 2001 and denied Plaintiff's request for reconsideration on May 25, 2001.

AAFES slated Plaintiff to begin working as a Senior Store Associate (a non-cash handling position) within the Four Seasons Store in the Exchange at Andrews Air Force Base on February 22, 2000. Dennis A. King, the Andrews Exchange General Manager, placed Plaintiff in the Four Seasons Store because it was the only regular full-time position at Plaintiff's grade available at the time of her reinstatement. King told Plaintiff that he wanted her to have a fresh start in her new position. As a Senior Store Associate in the Four Seasons Store, Beverly Ruth was Plaintiff's Store manager, Joyce Hall was Plaintiff's second line supervisor, and Cheryl Perry was Plaintiff's first line supervisor. The Four Seasons Store has a garden section that sells mulch, fertilizer, and other garden-related products that Plaintiff claims gave off irritant fumes. Plaintiff also claims that the Four Seasons Store was not well-ventilated. Plaintiff alleges that the fumes coupled with the poor ventilation aggravated her asthma.

It is unclear whether or not Plaintiff's Four Seasons supervisors knew of her 1998 EEO activity. However, at the very least, King, Ruth, and Hall were aware at the time of Plaintiff's reinstatement that Plaintiff had gotten into trouble while working in the cashier's cage at the Bollings Exchange; had been terminated because of that trouble; and, after engaging AAFES' internal appeal process, had been rehired and assigned to the Andrews Exchange.

On or near February 22, 2000, Plaintiff's first scheduled day of employment at Andrews, Plaintiff alerted King as to her asthma condition and expressed her concerns regarding the effect of the Four Seasons Store work environment on her asthma. On February 25, 2000, Plaintiff suffered an acute asthma attack allegedly caused by fumes and chemicals emanating from the garden section. On February 28, 2000, Plaintiff provided King with a note from her physician, dated February 25, 2000, saying that Plaintiff suffers from broncospasm and asthma and recommending that Plaintiff work in a setting with humidified air, more ventilation, less closure, and no chemical fumes. King moved Plaintiff from the garden section to the video rental section, which was inside the Four Seasons Store and separate from the garden section. On February 29, 2000, King wrote a letter to Plaintiff stating that the video rental section assignment met the accommodation recommended by her physician.

Plaintiff continued to be bothered by fumes, suffering acute asthma attacks on March 1, 2000 and March 7, 2000. On March 8, 2000, after speaking with Plain-

tiff's physician, King moved Plaintiff from the Four Seasons Store to the Men's Department in the Main Store at the Andrews Exchange. Plaintiff did not suffer another acute asthma attack after being reassigned to the Men's Department. As a Senior Store Associate in the Men's Department, Diana Cruz was Plaintiff's first line supervisor and Pam Myers was Plaintiff's manager. On or about March 8, 2000, Plaintiff telephoned Myers and told her that she was not happy and would not settle with her assignment to the Men's Department. Plaintiff wanted to work in a cash-handling position in the Men's Department but King and Myers would not allow her to do so.

Plaintiff reported for her first day of work in the Men's Department on March 11, 2000. Plaintiff was twenty minutes late for work, which she attributes to having been directed to report to Cruz, who was absent when Plaintiff arrived, instead of to Myers. When Plaintiff finally did report to Myers, Myers informed Plaintiff that she needed to arrive at work on time and asked her to refrain from discussing past employment issues with other employees and to make an effort to be a team player. On March 11, 2000, Cruz told Plaintiff that King and the General Counsel wanted Cruz and Myers to document Plaintiff's attendance record. It is unclear whether Cruz and Myers were aware of Plaintiff's 1998 EEO activity as of March 11, 2000, but both became aware soon thereafter because Plaintiff told them about her 1998 EEO activity. Prior to March 11, 2000, Myers knew Plaintiff had encountered problems at the Bolling Exchange, but was not sure if they were EEO related.

Sales associates are normally required to provide a doctor's note when they are absent more than three days. However, supervisors have the discretionary authority to require a doctor's note for shorter absences. Communication card entries, which are a record of an employee's commendations and infractions, and electronic mail reveal that Plaintiff was habitually tardy and often absent without having properly notified management. Consequently, Myers and Cruz required Plaintiff to submit medical documentation explaining all of her sick leave requests. Plaintiff rarely supplied such documentation and on more than one occasion was charged leave without pay. Myers and Cruz orally reprimanded Plaintiff for her tardiness and abuse of sick leave procedures. During her five years at the Andrews Exchange, Myers did not withhold pay for any other sales associate and requested a letter of reprimand for a sales associate on only one other occasion.

The evidence suggests that Plaintiff's overall work performance was poor when she did show up to work. Cruz and Myers had to consistently prod Plaintiff to perform her duties and claim that Plaintiff stopped working if she was not being directly supervised. However, Plaintiff received two positive customer referrals that led to communication card entries commending Plaintiff's job performance. Plaintiff alleges that her asthma problems persisted in the Men's Department due to poor ventilation and fumes caused by items such as candles, fragrances, cleaning products, and clothes sold in the Men's Department. Her supervisors tried to accommodate her condition by allowing her to bring a water bottle onto the sales floor, occasionally moving her to a better ventilated location, and allowing her to take breaks or sick leave.

On March 13, 2000, Plaintiff contacted an EEO counselor at the Andrews Exchange to complain of discrimination and harassment on the basis of race and/or handicap, and retaliation. Between March 13, 2000 and March 18, 2000, EEO person-

nel spoke with Eva Burgan, the human resources manager, and King regarding Plaintiff's EEO complaint. Plaintiff told Myers about her EEO counselor contact around this same time. On March 27, 2000, Plaintiff filed a formal EEO complaint alleging discrimination on the basis of her race (African–American), disability (asthma and bronchospasm) and retaliation for prior EEO activity. Plaintiff claimed in her formal EEO complaint that AAFES management discriminated and retaliated against her when it: (1) failed to reasonably accommodate her disability by assigning her to the Four Seasons Store and failed to promptly remove her from that location after learning of her disability; (2) failed to reasonably accommodate her disability within a reasonable time after moving her out of the Four Seasons Store; (3) refused to allow her to operate a cash register; (4) told her not to discuss her past employment issues; and (5) documented all of Plaintiff's instances of tardiness or absence.

On July 13, 2000 and July 14, 2000, an EEO investigator obtained affidavits from Plaintiff's supervisors, including King, Myers, and Cruz. On April 16, 2001, the Administrative Judge issued a decision finding that Plaintiff failed to establish that AAFES discriminated against her on the basis of race and disability, or that it had retaliated against her for prior EEO activity.

Myers met with Plaintiff on July 19, 2000 to inform Plaintiff that the leave she had requested for July 18 and July 19 was denied and that Myers was· requesting a written reprimand for prior insubordination. An altercation ensued during which Plaintiff admittedly became loud and security was called. Plaintiff claims she became upset because she thought Myers was requesting her termination. On July 25, 2000, King issued Plaintiff an Advance Notice of Suspension and, on August 29, 2000, King issued Plaintiff a Final Notice of Suspension. Plaintiff was suspended without pay for ten days.

Cruz and Myers rated Plaintiff's job performance as unsatisfactory in her evaluation for the period February 22, 2000 to August 20, 2000. Plaintiff received four points (zero to eight points is the unsatisfactory range) out of a possible eighteen, placing her in the "not promotable" range. Cruz and Myers again rated Plaintiff's job performance as unsatisfactory in her evaluation for the period August 21, 2000 to August 21, 2001. Plaintiff received eight points, again placing her in the "not promotable" range. However, this evaluation was subsequently raised to ten points, placing Plaintiff at the "expected" level of performance.

In June 2001, Plaintiff was reassigned to a switchboard position. As of May 2003, Plaintiff continued to work at the Andrews Exchange.

## II. SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the non-

moving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2729.1 (3d.1998). The non-movant must show that she has access to admissible evidence for presentation at trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See id.* at 317, 106 S.Ct. 2548 (1986). For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986). While the non-moving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

In response to Defendant's motion, Plaintiff fails to even mention her disability and race discrimination claims. As it is Plaintiff's responsibility to counter the motion for summary judgment with evidence of race and disability discrimination by Defendant, her failure to proffer any evidence whatsoever in support of these claims means she has failed to meet her burden of proof. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *See Adams v. Calvert County Pub. Schs,* 201 F.Supp.2d 516, 519 (D.Md.2002). Accordingly, Defendant's motion for summary judgment will be granted with respect to Plaintiff's race and disability discrimination claims.

Plaintiff's single remaining claim is that Defendant retaliated against her for engaging in protected activity. Defendant sets forth two arguments disputing its involvement in retaliatory behavior and supporting summary judgment in its favor: (1) Plaintiff cannot bring a retaliation claim in this Court based on claims for which she failed to exhaust available administrative remedies; and (2) the allegedly retaliatory actions Plaintiff complains of are not, as a matter of law, discriminatory. Having reviewed the record before it, including all of the pleadings and the parties' evidentiary submissions, the Court makes the following conclusions of law: (1) Plaintiff can bring a retaliation claim for the first time in this Court if she did not pursue any administrative remedies subsequent to the occurrence of the alleged retaliatory action(s); and (2) the allegedly retaliatory actions properly before this Court are not, as a matter of law, retaliatory. Therefore, Defendant's motion for summary judgment will be granted with respect to Plaintiff's retaliation claim as well.

### A) *Failure to Exhaust Administrative Remedies*

 Defendant argues that any allegedly retaliatory action for which available administrative remedies have not been exhausted is procedurally barred from contemplation by this Court. If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000). Since Title VII retaliation claims are related to and grow out of allegations contained in an EEOC charge, they are appropriately raised for the first time in federal court. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992). This rule recognizes that a plaintiff will be reluctant to again report to the EEOC after his employer has taken action against him for filing the first charge. *Riley v. Technical & Management Services, Inc.*, 872 F.Supp. 1454, 1459–60 (D.Md.1995). Furthermore, a plaintiff alleging retaliation arising from the filing of a Title VII charge may do so for the first time in court if the retaliation allegedly occurs while her underlying charge is pending. *Nye v. Roberts*, 97 F.Supp.2d 677, 679 (D.Md.2000). However, a plaintiff must exhaust her administrative remedies in order to properly file a civil suit when the alleged retaliation could have been raised in the original EEOC complaint. *Riley*, 872 F.Supp. at 1459–60.

Alleged retaliation that occurred before Plaintiff filed her March 2000 EEO complaint could have been raised in that complaint. Consequently, in order for Plaintiff to bring claims for such retaliation here, she must have previously brought them in her March 2000 EEO complaint. In her March 2000 EEO complaint, Plaintiff alleges that Defendant retaliated against her when it assigned her to the Four Seasons Store and did not move her within a reasonable time after learning that it could not accommodate her disability there; when it did not accommodate her disability within a reasonable time after moving Plaintiff out of the Four Seasons Store; when it refused to allow Plaintiff to operate a cash register or handle money; when Plaintiff's supervisor told her not to raise past matters of which, allegedly, prior EEO activity was a part; and when, as part of a pattern of harassment, Plaintiff's supervisors carefully documented plaintiff's absenteeism and tardiness. These five retaliation claims are properly before this Court.

Alleged retaliation that occurred after Plaintiff filed her March 2000 complaint could not have been raised in that complaint. Plaintiff's March 2000 complaint was the last one she filed. Inasmuch as Plaintiff is not required to file a new EEO complaint alleging retaliation for having previously engaged in protected activity, claims of retaliation that occurred after Plaintiff filed her March 2000 EEO complaint may be raised for the first time in this Court. These include the July 2000 denial of leave, Plaintiff's September 2000 ten day suspension, Plaintiff's July 2000 letter of reprimand, counseling and communication card entries subsequent to March 2000, and Plaintiff's August 2000 and August 2001 low performance evaluations.

### B) *Retaliation*

Defendant claims that the allegedly retaliatory actions taken by Defendant are not, as a matter of law, retaliatory. The United States Supreme Court has set forth a three step burden-shifting test for discrimination cases. First, Plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d

668 (1973). Second, if the prima facie case is established, an inference of discrimination arises that may be rebutted by an employer on a showing of legitimate, nondiscriminatory reasons for its actions. *Id.* Third, if the employer makes this showing, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons for its actions are pretextual. *Id.*

### 1) Prima Facie Case

■ To establish a prima facie retaliation case, Plaintiff must show that: (1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and asserted adverse action. *Von Gunten v. State of Maryland,* 243 F.3d 858, 863 (4th Cir.2001) (citing *Beall v. Abbott Laboratories,* 130 F.3d 614, 619 (4th Cir.1997)).

### a) Protected Activity

Defendant concedes that Plaintiff engaged in protected activity by virtue of her 1998 and 2000 EEO activity.

### b) Adverse Employment Action

■ Ultimate employment decisions such as hiring, discharging, promoting, granting leave, and compensating can constitute adverse employment actions. *Von Gunten,* 243 F.3d at 865. However, retaliatory conduct short of "ultimate employment decisions" can constitute adverse employment action as well. *Id.* What is necessary in all retaliation cases is evidence that the challenged discriminatory acts or harassment adversely affected the terms, conditions, or benefits of Plaintiff's employment. *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 650 (4th Cir. 2002) (citing *Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 243 (4th Cir.1997)). Terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies. *Von Gunten,* 243 F.3d at 869. An action that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of employment, is not an adverse employment action. *See Spriggs v. Pub. Serv. Comm'n of Md.,* 197 F.Supp.2d 388, 393 (D.Md. 2002).

Defendant's allegedly retaliatory acts must have affected the terms, conditions, or benefits of Plaintiff's employment in order to be adverse employment actions. In her opposition motion, Plaintiff lists her suspension, denial of leave, low performance evaluations, reprimands, and counseling and communication card entries as the adverse employment actions carried out by Defendant. Aside from the bald assertion that these are adverse employment actions, Plaintiff proffers no evidence that these actions affected the terms, conditions, or benefits of her employment. Moreover, Plaintiff does not even include Defendant's alleged failure to accommodate her asthma condition, refusal to allow her to operate a cash register or handle money, request that Plaintiff refrain from discussing past employment issues, and overly stringent documentation of Plaintiff's tardiness and absenteeism in her list of Defendant's alleged adverse employment actions. The Court is not compelled to address claims couched in unsupported assertions. Nevertheless, all of Plaintiff's claims of adverse employment action will be addressed for the sake of completeness.

■ Plaintiff's ten-day, unpaid suspension affected the terms, conditions or benefits of her employment because she did not receive the pay she normally would have received for that ten day period. As such, Plaintiff's unpaid suspension qualifies as an adverse employment action. *See Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 190 (4th Cir.2001)(evidence supports a

finding that a lockout was equivalent to a suspension and, therefore, an adverse employment action); *Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F.Supp.2d 511, 518 (D.Md.2002)(plaintiff's one-day, unpaid suspension could constitute an adverse employment action).

The denial of plaintiff's leave requests for July 18, 2000 and July 19, 2000 similarly resulted in Plaintiff not receiving pay she otherwise would have received. Thus, Defendant's denial of Plaintiff's leave requests qualifies as an adverse employment action. *See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir.1999)(including decrease in pay as an adverse employment action); *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981)(stating that inquiries into adverse employment actions have consistently focused on whether there has been discrimination in such ultimate decisions as hiring, **granting leave** (emphasis added), discharging, promoting and compensation); *Scott–Brown v. Cohen*, 220 F.Supp.2d 504, 511 (D.Md.2002)(stating that the denial of sick leave affected a benefit of employment).

Defendant relies on the proposition that the "manner in which" an employer implements its sick leave and disciplinary procedures does not constitute an adverse employment action, *See Von Gunten*, 243 F.3d at 865, in contending that the denial of Plaintiff's leave requests does not constitute an adverse employment action. This reliance overlooks an important distinction. Plaintiff's allegation that Defendant's denial of her requested leave is an adverse employment action is separate from Plaintiff's allegation that the unduly strict "manner in which" Defendant monitored Plaintiff's leave requests constitutes an adverse employment action. Defendant's argument applies to the latter allegation, but not to the former allegation.

■ Plaintiff's low performance evaluations, reprimands, and counseling and communication card entries did not affect the terms, conditions, or benefits of her employment. Even though Plaintiff's August 20, 2000 performance evaluation resulted in Plaintiff falling in the "not promotable" range, there is no evidence that a promotion arose for which Plaintiff was passed over because of her "not promotable" status. *See Thompson*, 312 F.3d at 652 (quoting *Spears v. Missouri Dept. of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir.2000)("A poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment")); *see also Jackson v. Maryland*, 171 F.Supp.2d 532, 545 (D.Md.2001)(stating that a poor evaluation by itself is not an adverse action that establishes a prima facie case of retaliation, especially when there is no evidence linking it to a missed opportunity for promotion). Moreover, Plaintiff lost no pay and maintained the same position following the low performance evaluations, reprimands, and counseling and communication card entries. In fact, Plaintiff was still employed by Defendant as of May 2003. Plaintiff's low performance evaluations, reprimands, and counseling and communication card entries do not, therefore, constitute adverse employment actions. *See Thompson*, 312 F.3d at 651–52(finding that disciplinary actions did not constitute adverse employment actions where plaintiff lost no pay and maintained the same position in their wake); *Chika v. Planning Research Corp.*, 179 F.Supp.2d 575, 587 (D.Md.2002)(two verbal reprimands did not amount to adverse employment actions where there was no evidence that they led to a demotion, termination, or had any impact on the plaintiff's job performance).

■ Of the five employment actions Plaintiff left unmentioned in her opposition motion, only Defendant's alleged failure to

accommodate Plaintiff's disability by not moving her out of the Four Seasons Store quickly enough qualifies as an adverse employment action. *See Von Gunten*, 243 F.3d at 865(stating that increased exposure to dangerous pathogens could adversely affect the terms, conditions, or benefits of employment). The evidence shows that by remaining in the Four Seasons Store for two weeks, the conditions of Plaintiff's employment were adversely affected. The Four Seasons Store contained fertilizers and other garden products that Plaintiff alleges emanated fumes that aggravated her asthma. Plaintiff's three asthma attacks while stationed in the Four Seasons Store support this allegation. Drawing all inferences in favor of Plaintiff, she establishes that Defendant's failure to more promptly transfer her out of the Four Seasons Store is an adverse employment action.

 Plaintiff cannot establish that any of the four remaining employment actions she complains about adversely affected her employment. After transferring into the Men's Department, Plaintiff did not suffer another asthma attack and experienced only minor discomfort, which her supervisors accommodated by allowing her to take breaks, carry a water bottle, and move to better ventilated areas. Unlike her stay in the Four Seasons Store, remaining in the Men's Department did not adversely affect the terms, conditions, or benefits of Plaintiff's employment. Plus, as evidenced by her phone call to Pam Myers, Plaintiff was soured by her transfer to the Men's Department before she even reported there for work. *See Spriggs*, 197 F.Supp.2d at 393(An action that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of employment, is not an adverse employment action).

 Similarly, not being permitted to use a cash register or handle money, being told not to discuss past employment issues, and having her tardiness and absenteeism carefully documented did not adversely affect the terms, conditions, or benefits of Plaintiff's employment. These actions caused no decrease in pay or change in position for Plaintiff. *See Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 755 (4th Cir.1996)(finding that an employee being instructed to "forget about" prior employment issues was not an adverse employment action); *Von Gunten*, 243 F.3d at 869(supervisors' hyper-scrutiny of employee's sick leave was not an adverse employment action because terms, conditions, or benefits of a person's employment do not include general immunity from basic employment policies); *Thompson*, 312 F.3d at 651–52(finding that disciplinary actions did not constitute adverse employment actions where plaintiff lost no pay and maintained the same position in their wake).

Therefore, the only three claims that constitute adverse employment action are Plaintiff's ten-day suspension, her denied leave, and Defendant's alleged failure to accommodate her disability by not promptly moving her out of the Four Seasons Store.

#### c) Causal Connection

 Plaintiff offers only temporal proximity between Defendant's knowledge of her protected activity and Defendant's adverse employment actions as evidence of a causal connection. The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508–11, 149 L.Ed.2d 509 (2001). Evidence that the alleged adverse action occurred shortly after the

employer became aware of the protected activity is sufficient to satisfy the less onerous burden of making a prima facie case of causation. *Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir.1998)(internal quotations omitted). Conversely, a lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action negates any inference that a causal connection exists between the two. *Id.* Temporal proximity is insufficient to establish a causal connection when there has been no showing that Defendant knew Plaintiff had engaged in the protected activity. *Jackson,* 171 F.Supp.2d at 545; *see also Dowe,* 145 F.3d at 657.

 Plaintiff was issued an Advance Notice of Suspension on July 25, 2000. The two instances of denied leave brought to this Court's attention occurred on July 18, 2000 and July 19, 2000. Plaintiff contacted an EEO counselor on March 13, 2000 and filed a formal EEO complaint on· March 27, 2000. The evidence suggests that King, the general manager that suspended Plaintiff, and Myers, the supervisor that denied Plaintiff's leave, became aware of Plaintiff's EEO activity during this period in March 2000. Therefore, · approximately four months separate Defendant's knowledge of Plaintiff's EEO activity from Plaintiff's Advance Notice of Suspension and denied leave. The Court questions whether four months is sufficient temporal proximity for inferring a causal connection. *See Hooven–Lewis v. Caldera,* 249 F.3d 259, 278 (4th Cir.2001)(stating that a six month lag negates any inference of causation); *Conner v. Schnuck Markets, Inc.,* 121 F.3d, 1390, 1395 (10th Cir.1997)(holding that four month lag between protected activity and termination not sufficient to justify inference of causation); *but see Williams v. Cerberonics,* 871 F.2d 452, 457 (4th Cir.1989)(finding a causal connec-

tion between a plaintiff's protected activity and her discharge where the employer fired plaintiff approximately four months after plaintiff filed a discrimination complaint). However, drawing all inferences in favor of Plaintiff, the Court will infer a causal connection between her protected activity and her suspension and denied leave.

 Defendant allegedly failed to accommodate Plaintiff's asthma condition by keeping her in the Four Seasons Store from February 22, 2000 until March 8, 2000. The evidence suggests that Plaintiff's Four Seasons supervisors became aware of her employment troubles at the Bolling Exchange around the time of her first day at the Four Seasons Store in the Andrews Exchange. It is unclear whether Plaintiff's Four Seasons supervisors knew of Plaintiff's involvement in EEO activity specifically. However, their knowledge of Plaintiff's termination and subsequent reinstatement via AAFES' internal appeal procedure qualifies as knowledge of protected activity. *See Kubicko v. Ogden Logistics Servs.,* 181 F.3d 544, 551 (4th Cir. 1999)(as long as an employee complains to his or her employer or participates in an employer's internal grievance procedure, the employee's activities are protected); *Armstrong v. Index Journal Co.,* 647 F.2d 441, 448 (4th Cir.1981)(protected activity includes informal protests such as voicing complaints to employers or using an employer's internal grievance procedures). Because Defendant became aware of Plaintiff's protected activity in close temporal proximity to allegedly not accommodating her disability by stationing her in the Four Seasons Store for too long, the Court will infer a causal connection between the two.

Plaintiff has established a prima facie case of retaliation for her suspension, denied leave, and Defendant's alleged failure

to accommodate her asthma by not quickly moving her out of the Four Seasons Store.

### 2) Defendant's Legitimate, Non-discriminatory Reasons

 Defendant proffers legitimate, non-discriminatory reasons for all of its actions, including denying Plaintiff leave, suspending Plaintiff, and keeping Plaintiff in the Four Seasons Store from February 22, 2000 until March 8, 2000. The record shows that Plaintiff was habitually late for work. Plaintiff consistently took leave or was absent without notifying any of her superiors or following proper leave-taking procedures. Based on this disregard for properly authorizing missed work time, Defendant had good reason to deny Plaintiff's leave requests for July 18, 2000 and July 19, 2000.

When Defendant informed Plaintiff on July 19, 2000 that her leave requests would be denied, Plaintiff incited an altercation during which she admittedly became loud and belligerent. The extent of Plaintiff's outburst is evidenced by the fact that at least one employee felt the need to call security. Defendant was well within the bounds of legitimacy when it suspended Plaintiff for her role in this altercation.

Defendant initially placed Plaintiff in the Four Seasons Store because it was the only available position at the Andrews Exchange. The day after receiving a note from Plaintiff's physician, Defendant moved Plaintiff away from the garden section, into the video rental section. Defendant believed that this move accommodated Plaintiff's asthma problem and accorded with the physician's recommendations. When Plaintiff's asthma problems persisted, Defendant moved Plaintiff out of the Fours Seasons Store altogether and into the Men's Department. Defendant effected this move the day after speaking with Plaintiff's physician on the phone and only a week after having moved Plaintiff into the video rental section. Thus, Defendant acted legitimately in accommodating Plaintiff's asthma problem.

The record suggests that in addition to Plaintiff's habitual lateness and frequent unauthorized absences, her overall work performance was unsatisfactory. This lends credence to the legitimacy of Defendant's actions. *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir.1998)(finding no discriminatory intent where plaintiff was repeatedly tardy and performed her job unsatisfactorily).

### 3) Evidence of Pretext

Defendant has proffered legitimate, non-retaliatory reasons for its actions thereby shifting the burden to Plaintiff to prove by a preponderance of the evidence that these reasons are pretextual. Plaintiff offers no evidence that Defendant's reasons for suspending her, denying her leave, and maintaining her assignment to the Four Seasons Store for two weeks are pretextual. Plaintiff alludes to the "circumstances as a whole" and asserts that her supervisors lacked regard for her health condition in mustering an attempt to show pretext. However, Plaintiff presents no facts that tend to show Defendant's actions were motivated by retaliation. Consequently, Plaintiff has not satisfied the third element of the *McDonnell Douglas* test. Defendant's motion for summary judgment on Plaintiff's retaliation claim will be granted. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir.2000)(a showing of a difference of opinion, coupled with conclusory allegations of retaliation, cannot reasonably support the conclusion that employee's discharge was motivated by retaliatory animus).

## IV. CONCLUSION

For the reasons herein stated, Defendant's motion for summary judgment will

be granted. Plaintiff disavowed any claims of discrimination on the basis of race or disability when she failed to present any evidence supporting these claims. Plaintiff establishes a prima facie case of retaliation for only three of Defendant's employment actions. However, Plaintiff is unable to confront Defendant's legitimate, non-retaliatory reasons for its actions with evidence that these reasons are pretextual. Therefore, Plaintiff fails to satisfy its burden of presenting this Court with a genuine issue of material fact. Summary judgment will be granted on all claims. An Order consistent with this opinion will follow.