**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-1622**

MOHAMMED REZA SALAMI,

Plaintiff - Appellant,

versus

NORTH CAROLINA AGRICULTURAL & TECHNICAL STATE
UNIVERSITY,

Defendant - Appellee.

Appeal from the United States District Court for the Middle
District of North Carolina, at Durham.  Frank W. Bullock, Jr.,
District Judge.  (CA-03-909-1)

Submitted:  June 9, 2006              Decided:  June 28, 2006

Before KING, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

J. Elliott Field, Charlotte, North Carolina, for Appellant.  Roy
Cooper, North Carolina Attorney General, Kimberly D. Potter,
Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Mohammed Reza Salami appeals from the final judgment in favor of his employer, North Carolina Agricultural and Technical State University ("A&T"), in this employment discrimination civil action. The judgment appealed from is the result of a five-day jury trial in the Middle District of North Carolina (in which the jury unanimously found for A&T), and the district court's partial award of summary judgment to A&T. As explained below, we affirm.

## I.

Since 1987, Salami, who was born in Iran, has been employed by A&T, a public land-grant university located in Greensboro, North Carolina. Salami began his employment with A&T as an associate professor in A&T's College of Engineering (the "COE"), eventually earning tenure as a full professor. During his time as a professor at A&T, Salami has generally received good performance evaluations, and he has brought more than one million dollars in research proposal funds to A&T. In July 1998, Salami was appointed Associate Dean of the COE for a twelve-month period by then-Dean Lonnie Sharpe, Jr. With his new appointment, Salami received a twenty-percent increase in salary, twelve months' pay per year (rather than ten months' pay), increased benefits, and a promotion. Salami remained Associate Dean for the next several years, maintaining favorable employment evaluations.

In July 2000, Sharpe was replaced as Dean of the COE by Joseph Monroe. Under Monroe, Salami was responsible for federal "Title III grants." In that capacity, Salami was expected to monitor the status of funds for the COE's graduate students and report his conclusions to Monroe. Monroe, in turn, would report to Kenneth Murray, A&T's Title III Director. Under Murray's predecessor, Salami had not received any negative criticism for his management of Title III grant money. Murray, however, accused Salami of mismanaging Title III funds, even though all of Salami's changes to the Title III budget were approved by Murray himself, along with Monroe.

Salami asserts that Murray held a negative view of him on account of his national origin. According to Salami, Murray once told him that "A&T is first for blacks, then for whites, and then for you." Salami also presented evidence that Murray remarked to a job applicant that Salami did not possess the work ethic of most Iranians, and did not work as hard as Chinese faculty members. When Murray was the interim Dean of the COE in 1995, he rejected Salami's application for a full professorship. Salami reapplied in 1996, and Murray again denied the application. Following the 1996 denial, Salami's application was reviewed by a neutral person, and Salami was awarded a full professorship on July 1, 1997.

In August 2001, Salami learned that the United States Department of Education ("DOE") had decided to conduct a site audit

3

of A&T's Title III grant program. Upon learning of the impending audit, Murray expressed concern to Salami and Monroe about Title III budget changes that Murray and Monroe had approved. Murray and Monroe asked Salami to prepare a report explaining those budgetary changes. Salami complied, and his report was approved by Monroe without incident. Murray, however, called the report "worthless" and directed Salami and Monroe to redo it. Murray later had Salami removed from administration of the Title III grant program. Murray was eventually relieved of his Title III responsibilities pursuant to a DOE request.

On November 28, 2001, Salami received a renewal letter from A&T Chancellor James Renick, which informed Salami that he would continue in his position as Associate Dean of the COE for the 2001-2002 school year. On December 7, 2001, Salami met with Monroe to discuss job performance and, according to Salami, Monroe had no negative comments. Five days later, on December 12, 2001, however, Monroe gave Salami an undated letter that informed him of his demotion from the Associate Dean position, effective January 1, 2002. Although the letter asserted that the demotion was due to a reorganization of the Dean's staff, Monroe allegedly told Salami he was being demoted because Murray could no longer bear working with him.

In response to his demotion, Salami filed a charge with the Equal Employment Opportunity Commission (the "EEOC") on May 2,

4

2002. According to Salami, A&T thereafter retaliated against him for filing that EEOC charge by failing to renovate Graham Room 10, a room on A&T's campus that Salami used for conducting research. Salami asserts that he had requested $250,000 in renovations to Graham Room 10, and his request was approved in August 2000. The undisputed evidence shows that the only work undertaken on Graham Room 10, however, consisted of a ten-to-fifteen thousand dollar renovation, which was completed in the fall of 2000. On October 31, 2002, Salami filed a second EEOC charge, contending that A&T had impermissibly retaliated against him for having filed his May 2, 2002 EEOC charge by, inter alia, ending the renovations to Graham Room 10.

On July 9, 2003, Salami received a right to sue letter from the EEOC regarding his May 2, 2002 EEOC charge and, on July 22, 2003, he obtained a right to sue letter pertaining to his October 31, 2002 charge. Subsequently, on September 24, 2003, Salami instituted this civil action by filing a complaint in the Middle District of North Carolina. By his complaint, Salami asserted claims for breach of contract; demotion on the basis of national origin, in contravention of Title VII of the Civil Rights Act of 1964; and unlawful retaliation, also in violation of Title VII. The parties then proceeded through discovery. On November 17, 2004, before the close of discovery proceedings, A&T filed a motion to have its expert report deemed timely served. Salami filed an

opposition thereto and a motion to exclude A&T's expert report on November 29, 2004. A&T then filed a motion for summary judgment on November 30, 2004.

By Order of April 13, 2005, the district court, as relevant, granted A&T's motion to have its expert report deemed timely served, denied Salami's motion to exclude the expert report, and granted in part A&T's motion for summary judgment. See Salami v. N.C. Agric. & Technical State Univ., 394 F. Supp. 2d 696 (M.D. N.C. 2005). With respect to its summary judgment ruling, the court permitted all of Salami's claims to survive, except for his retaliation claim, to the extent it was premised on A&T's non-renovation of Graham Room 10. The court subsequently conducted a jury trial in late April 2005. On April 25, 2005, the jury returned a unanimous verdict, finding that Salami had not substantiated any of his claims for relief. Thereafter, on April 27, 2005, the court entered a final judgment in favor of A&T. Salami has timely noted an appeal therefrom, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A.

Salami first contends that the district court erred in awarding summary judgment to A&T on his retaliation claim, to the extent that claim was premised on A&T's non-renovation of Graham

6

Room 10.  We review de novo an award of summary judgment, viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party.  Baqir v. Principi, 434 F.3d 733, 741 (4th Cir. 2006).  Summary judgment is not appropriate unless "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'"  Id. (quoting Fed. R. Civ. P. 56(c)) (alteration and internal quotation marks omitted).

In pertinent part, section 704(a) of Title VII prohibits an employer from taking an adverse employment action against any employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  Title VII § 704(a), 42 U.S.C. § 2000e-3(a).  Under the burden-shifting framework formulated by the Supreme Court in McDonnell Douglas Corp. v Green, a Title VII plaintiff bears the initial burden of making out a prima facie case of retaliation.  See 411 U.S. 792, 802-04 (1973).  "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements:  (1) that []he engaged in a protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two

7

events." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005).

Salami is unable to demonstrate a causal nexus between his May 2, 2002 EEOC charge and A&T's discontinuation of the renovations on Graham Room 10. The undisputed evidence shows that the last renovations on Graham Room 10 occurred in the fall of 2000, and there is no evidence to suggest that plans to resume renovations may have been scuttled after Salami filed his EEOC charge. The discontinuation of such renovations could not therefore have been due to Salami's May 2, 2002 EEOC charge. See Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 651 (4th Cir. 2002) (recognizing that "the continuation of the alleged adverse action after the filing of a discrimination complaint [does] not, without more, support [the plaintiff's] prima facie burden of showing causation"). The district court thus did not err in awarding summary judgment to A&T on Salami's claim of retaliation based on the failure to renovate Graham Room 10.

B.

Salami also seeks a new trial, relying solely on his contention that the district court erred in deeming A&T's expert report timely served and, consequently, allowing A&T's expert, Dr. Gringer Calloway, to testify. Dr. Calloway's testimony concerned Salami's mental condition, and was therefore relevant only to the

8

issue of damages. The jury, however, found Salami's claims for relief unsubstantiated and, accordingly, it had no occasion to consider the damages issue. "The court at every stage of the proceedings must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Fed. R. Civ. P. 61. In these circumstances, Calloway's testimony could not have affected Salami's substantial rights, and its admission, even if erroneous, must be disregarded.

## III.

Pursuant to the foregoing, we affirm the judgment in favor of A&T. We dispense with oral argument because the facts and legal contentions of this appeal are adequately presented in the materials before the Court and argument would not aid us in the decisional process.

<u>AFFIRMED</u>