**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1248**

RONALD G. ULLRICH,

                Plaintiff - Appellant,

      v.

CEXEC, INC.,

                Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, Senior District Judge. (1:16-cv-00570-TSE-IDD)

Submitted: September 28, 2017                Decided: October 12, 2017

Before NIEMEYER, THACKER, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

R. Scott Oswald, Nicholas Woodfield, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant. Steven W. Ray, Amanda S. DiSanto, ISLER DARE, PC, Vienna, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ronald G. Ullrich brought this action against CEXEC, Inc., alleging employment discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. The district court granted CEXEC's motion for summary judgment. On appeal, Ullrich challenges only the dismissal of his retaliation claims, alleging that the district court improperly found that he failed to make a sufficient showing that his termination was based on retaliatory animus. We affirm.

In 1984, Ullrich was hired by CEXEC. He rose through the ranks, and in January 2008, he took over the duties typically associated with a Chief Operating Officer, and worked in a non-billable, overhead role. In May 2014, the President and CEO of CEXEC, Weston Rhodes, demoted Ullrich by realigning Ullrich's job duties to focus exclusively on business development. In the same month, Ullrich complained to the human resources director, Carolyn Cahoon ("H.R. Director"), that Rhodes was harassing him regarding his work performance. A year later, in March 2015, Ullrich filed a Charge of Discrimination with the EEOC ("EEOC Charge") asserting claims of discrimination on the basis of age and disability.

In August 2015, CEXEC suffered two significant business losses. As a result, a number of employees would become overhead until they were able to find new billable work. Rhodes determined that CEXEC needed to reduce overhead. Devon Musselman, Ullrich's supervisor, contacted Ullrich directly to advise him that his position was in

2

jeopardy unless CEXEC could find a direct billing opportunity for him. Musselman requested that, by September 20, 2015, Ullrich either identify (1) work at which he could immediately become billable, or (2) a project that had a high probability of a win for CEXEC. On September 20, Ullrich emailed Musselman a document outlining his plan for obtaining direct billing. A significant portion of the plan was a verbatim reiteration of content from the internet on business development. Further, Ullrich's plan only referenced a single prospect for direct billing which was not yet open for bidding.

After receiving Ullrich's email, Musselman informed Rhodes that Ullrich had failed to identify a direct billing opportunity or a potential contract with a high probability of a win. Accordingly, Musselman called Ullrich on September 21, 2015, and told him that he was being laid off. He also sent a follow-up letter, explaining the circumstances of the layoff.

Subsequently, Ullrich filed the instant suit in district court. The district court granted summary judgment, finding that the gaps between Ullrich's complaint to the H.R. Director in May 2014 and his termination in September 2015 and between Ullrich's EEOC Charge in March 2015 and his termination were too lengthy to permit an inference of retaliation. The court further ruled that the H.R. Director's testimony regarding Rhodes' statements was insufficient evidence of a retaliatory motive to prevent summary judgment. Ullrich timely appealed.

We review a district court's order granting summary judgment de novo, drawing reasonable inferences in the light most favorable to the non-moving party. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). Summary judgment may

3

be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An otherwise properly supported motion for summary judgment will not be defeated by the existence of some factual dispute; rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hooven-Lewis*, 249 F.3d at 265 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Indeed, to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1); *see Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case." (internal quotation and citation omitted)).

A plaintiff may proceed by direct and indirect evidence of a retaliatory animus or by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Foster v. Univ. of Md.*, 787 F.3d 243, 249 (4th Cir. 2015). Under *McDonnell Douglas*, once the plaintiff establishes his prima facie case, the burden shifts to the employer to put forth a legitimate, non-discriminatory reason for the action. *See McDonnel Douglas*, 411 U.S. at 802. To prevail on an ADEA or ADA retaliation claim, a plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him by the employer; and (3) there was a causal connection between the first two elements. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir.

4

2012) (ADA); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc) (ADEA). If this burden is met, the plaintiff must then show by a preponderance of the evidence that the proffered reason is pretextual or his claim will fail. *See Foster*, 787 F.3d at 250. That is, "[i]f a plaintiff can show that []he was fired under suspicious circumstances and that h[is] employer lied about its reasons for firing h[im], the factfinder may infer that the employer's undisclosed retaliatory animus was the actual cause of her termination." *Id*.

On appeal, Ullrich first claims that the district court erred by finding that CEXEC's CEO, Weston Rhodes's "multiple statements of intent to retaliate" during the sixty days following Ullrich's March 2015 EEOC Charge were insufficient to show either retaliatory animus or causation. However, the evidence, viewed in the light most favorable to Ullrich, does not show that Rhodes made any statements showing an intent to retaliate, much less any such statements during that time period. While Rhodes discussed terminating Ullrich with the H.R. Director four or five times between May 2014 and May 2015, there is no evidence that any of these conversations took place after March 2015. Additionally, while Rhodes was counseled about avoiding the appearance of retaliation, it is unclear whether the H.R. Director was referencing retaliation based upon Ullrich's May 2014 informal complaint or the March 2015 EEOC Charge. In any event, in these conversations, the fact that Rhodes was considering terminating Ullrich was tied to his performance and business concerns. Finally, while the H.R. Director was of the belief that Rhodes felt Ullrich's complaint was a distraction that was costing CEXEC time and money, she could not remember if Rhodes had ever actually voiced this

concern. To the contrary, she remembered that Rhodes stated that such complaints were the cost of doing business and were covered by insurance.

We find that this evidence does not provide more than a scintilla of evidence of retaliatory motive. Moreover, it is not clear that any of the Rhodes's conversations actually took place after the EEOC Charge. In any event, while there is evidence of the general subject of the conversations, no specific retaliatory statements can be attributed to Rhodes. Accordingly, the district court properly found that Ullrich had not put forth sufficient direct or indirect evidence of retaliation to avoid summary judgment. For the same reasons, Ullrich fails to make a prima facie case of retaliation.

Moreover, the district court found that, even if Ullrich's evidence was sufficient to constitute a prima facie case, CEXEC provided a legitimate, non-discriminatory reason for Ullrich's termination—the need to reduce overhead and Ullrich's inability to show a likelihood that he could quickly become billable. Ullrich contends that he has shown pretext through testimony regarding Rhodes's statements, Rhodes's decision to terminate Ullrich prior to Ullrich's submission of his plan for direct billing, and the failure to require other employees to provide similar direct billing plans.

First, evidence of Rhodes's statements fails to show pretext for the reasons discussed above. Regarding Rhodes's decision to terminate Ullrich, Rhodes's email dated September 9, 2015, referenced by Ullrich, clearly shows an intent to lay off Ullrich, that would be "revisit[ed]" if he (or the company) could find direct work that would offset Ullrich's costs. As such, this letter does not contradict CEXEC's later request for Ullrich to show that he could find direct billable work. Moreover, it does not show an

6

intent to retaliate, as the decision was tied to performance and the need to reduce overhead and occurred over five months after Ullrich's EEOC Charge. Further, the significant passage of time between the two actually tends to negate an inference of retaliation. *See Hoover-Lewis*, 249 F.3d at 278 (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)) (holding that a six month lag is sufficient to negate any inference of causation).

Finally, turning to the proffered comparators, both of these employees were working partially on directly billable work in September 2015 and became fully billable within a couple of months. Ullrich does not dispute that he was completely nonbillable at the time of his termination. He also failed to show any likelihood that he would be able to become billable within a short period of time. Further, Ullrich did not provide any evidence regarding these would-be comparators' positions, supervisors, history, or other relevant information. Accordingly, Ullrich's attempt to show pretext through the use of comparators is without merit. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272–73 (4th Cir. 2005) (requiring comparators to hold similar positions); *see also Coleman v. Donahoe*, 667 F.3d 835, 841–42 (10th Cir. 2012) (while comparator evidence is relevant at the pretext stage, there must be "sufficient commonalities" to permit a "meaningful comparison"). As such, the district court correctly concluded that Ullrich failed to show pretext.

Thus, we affirm the district court's order granting summary judgment to CEXEC. We dispense with oral argument because the facts and legal contentions are adequately

7

presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*